IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 10-764-01 |
| JUAN SANCHEZ : | |

MOTION TO SUPPRESS EVIDENCE
MEMORANDUM OPINION AND ORDER

Rufe, J.                                                                           July 10, 2012

      The indictment in this case charges Defendant Juan Sanchez with possession of firearms by a person prohibited, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). In Count One, he is charged with possessing and affecting interstate commerce with a Ruger, .22 caliber pistol, Model MK II, serial number 221-17934 ("the Ruger") after having been convicted of a crime punishable by imprisonment for a term exceeding one year. In Count Two, he is charged with possessing four other firearms, which were found during a search of Defendant's residence at 3537 North Water Street, Philadelphia, Pennsylvania ("3537 Water"), after having been convicted of a crime punishable by imprisonment for a term exceeding one year.

      Defendant has filed a motion to suppress the evidence found during the search of 3537 North Water Street, Philadelphia, Pennsylvania ("3537 Water") and also statements made by Defendant after the search, in which he admitted purchasing and selling the Ruger.

      Defendant couples his motion to suppress with requests for discovery, seeking disclosure of all statements, documents and notes related to law enforcement's identification of Defendant.

      Upon consideration of the motion and opposition thereto, and after oral argument on May

25, 2012, the Court denies the request for discovery and the motion to suppress.

I.      FACTUAL[1] AND PROCEDURAL HISTORY

On or about July 9, 2010, seven firearms were stolen from the home of a Drug Enforcement Administration agent in Uwchlan Township, Pennsylvania, including a Ruger .22-caliber pistol, serial number 221-17934 ("the Ruger").  Victor and Jonathan Fuentes (the "Fuentes brothers") were later arrested and charged with the theft.  After taking the Fuentes Brothers' statements, federal agents interviewed Norbert Estevez on August 23, 2010.

Estevez waived his Miranda rights[2] and informed the agents that the Fuentes Brothers had told him about the theft of seven firearms from the DEA agent, and asked if Estevez was interested in selling one or more of the firearms for them.  He agreed to sell the Ruger and one other firearm, and he did so.  Estevez told the agents that he sold the Ruger to an individual named "Papo," approximately one month before the interview, for $250.  Estevez kept $50, and the Fuentes Brothers were given the balance.  The sale occurred in Estevez's home on Kip Street, but Estevez informed the agents that Papo lived near A and Tioga Streets in Philadelphia and managed a bar, Many Faces, at that intersection.

The next day, August 24, 2010, the agents went to Many Faces at 3454 A Street and heard a waitress refer to a man behind the bar as "Papo."  "Papo" confirmed that he worked at the bar, and identified himself as Juan Sanchez.  A database check confirmed that Defendant lived at 3537 Water Street, one block from Many Faces.  A background check also revealed that

---

[1] The background facts recited are gleaned from the Affidavit in support of the search warrant for 3537 Water.

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

2

Defendant had several felony drug convictions, the most recent in 2007, and, because of those convictions, Defendant was prohibited by law from possessing a firearm.

Finally, also on August 24, 2010, agents showed a photograph of Defendant to Estevez. Estevez identified Defendant as "Papo," to whom he had sold the Ruger on Kip Street.

The agents prepared an affidavit supporting a search warrant for Defendant's residence at 3537 Water, which provided a detailed account of how the agents had identified Defendant as the "Papo" who had purchased the Ruger. On August 25, 2010, the magistrate judge signed the search warrant, permitting agents to search 3537 Water for the Ruger.

On August 26, 2010, agents searched 3537 Water and seized, from a bedroom, four firearms, but not the Ruger. In addition, agents found six packets of heroin inside Defendant's wallet, along with his identification card. Bills addressed to Defendant at 3537 Water were also found during the search.

Defendant was arrested, apprised of his Miranda rights, and interviewed. Defendant admitted that he had purchased the Ruger from Estevez 2-4 weeks earlier, explained that he had resold the gun the same day for $550, and admitted to owning the firearms found in his house. About three months later, a federal grand jury charged him with two counts of possession of firearms by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).

The Government produced the affidavit supporting the search warrant, the search warrant itself, Defendant's statements to investigators, and Defendant's criminal history to defense counsel. In response to requests from counsel, the Government also provided unredacted copies of materials previously provided with redactions. Defendant now moves for additional discovery.

In addition, Defendant moves to suppress evidence found during the search of 3537 Water, as well as statements and admissions he made after the search.

## II.   DISCUSSION

**Request for Additional Discovery**

Due process requires the Government to disclose any evidence favorable to the accused or damaging to its own case.[3] Defendant argues that the full statement of Norbert Estevez, including the details of his identification of Defendant and the circumstances surrounding that identification, including any deals for leniency offered by the Government, should be provided to him, pursuant to Brady, the Jencks Act, and Federal Rule of Criminal Procedure 16.

The Government notes that it has revealed the substance of the identification information provided by Estevez in its affidavit of probable cause, and further notes that Estevez's statements contained no exculpatory information regarding Defendant. Indeed, as outlined above, the affidavit of law enforcement officers indicates that Estevez provided them with a nickname, a place of employment, and a possible address, and later identified Defendant from a photograph as the "Papo" to whom he had sold the Ruger. The Government provided this affidavit to Defendant in a timely manner. Defendant has made no showing that the portion of Estevez's statement included in the affidavit was an intentional and material misstatement, or that it was misleading in its effect. He points to nothing to suggest that there was exculpatory information in Estevez's statement which was omitted from the affidavit. As the Government does not currently intend to call Estevez to testify at trial, the Court finds that the Government has

---

[3] Brady v. Maryland, 373 U.S. 83, 87 (1963) ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.")

disclosed sufficient information about the identification of Defendant.

Defendant has also requested disclosure of any deal Estevez made with the Government in connection with his sale of the Ruger to Defendant. Based on his knowledge that Estevez is not currently in custody, Defendant infers that agents promised Estevez that charges against him would be dropped if he identified a buyer of the Ruger. Therefore, Defendant argues, Estevez's identification of Defendant as the buyer was not credible, it was "coerced in some way based on a deal."[4] He argues that the magistrate should have been made aware of any favorable treatment Estevez received in exchange for identifying "Papo"/ Defendant, as the magistrate may have rejected the application for a warrant had this information been disclosed. However, as the Government pointed out at oral argument, the state charges against Estevez were *nolle prossed* so that the federal government could pursue its own charges against Estevez. Furthermore, deals for leniency are not made by investigators, and Assistant U.S. Attorney Leverett had not offered Estevez any deal for leniency at the time Estevez made the statements which led to the identification of Defendant. Defendant has failed to convince this Court that further disclosures might reveal that the Government provided Estevez with an incentive to "pin[] the gun on some sucker"[5] before or during the identification process on August 23 and 24, 2010. Therefore, disclosure of any deal with the Government is not required in connection with the Motion to Suppress. Because the Government does not intend to call Estevez as a witness at trial, the Government also need not disclose any deal which may bear on Estevez's credibility as a trial witness at this time.

---

[4] May 25, 2012 Tr. at 16.

[5] Def.'s Motion to Suppress, Doc. No. 22 at 4.

For the aforementioned reasons, Defendant's Motion for additional disclosures will be denied without prejudice.

**Legality of the Search**

The Fourth Amendment to the United States Constitution reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized."  Before issuing a search warrant, the issuing judge, in this case a magistrate judge, must consider all the circumstances set forth in the affidavit before him or her, and decide whether there is a fair likelihood that contraband or evidence of a crime will be found in the place to be searched.[6]  The question before this Court is whether the issuing magistrate judge had a substantial basis to conclude that there was probable cause for the search of Defendant's home.[7]  The Court must uphold the warrant if the affidavit provided a sufficient basis for the magistrate's ruling.[8]  The factors the Court must consider include the type of crime, the items sought, and the opportunity for concealment.[9]

Here, the crime at issue is the possession of a firearm by a prohibited person. Investigators wished to search Defendant's home for the Ruger, after Defendant was identified, by the seller, as the purchaser of that firearm.  The identification was made approximately one

---

[6] Illinois v. Gates, 462 U.S. 213, 238 (1983).

[7] Id. at 238-39.

[8] United States v. Jones, 994 F.2d 1051, 1057 (3d Cir. 1993).

[9] Id. at 1056 (citing United States v. Jackson, 756 F.2d 703, 705 (9th Cir. 1985) and other cases).

6

month after the sale. Agents completed an affidavit of probable cause, and a magistrate judge issued a search warrant for Defendant's home at 3537 Water.

Defendant asserts that the affidavit of probable cause did not contain a sufficient basis for the magistrate's ruling for two reasons. First, Defendant argues that the affidavit of probable cause failed to establish that the identification of Defendant was reliable and credible, and therefore the magistrate erred in issuing the warrant. Regarding reliability, Defendant argues that he was identified by agents based on a single piece of information: Estevez's admission that he sold the Ruger to a man using the common nickname "Papo." This is an incorrect characterization of the information available to the agents, and to the magistrate. In addition to providing agents with the Ruger purchaser's nickname, Estevez provided the agents with "Papo's" approximate address, and the name and address of his place of employment. Investigative work revealed that Defendant worked at Many Faces, lived near A and Tioga Streets, and used the nickname "Papo." Estevez confirmed that the man in the photograph of Defendant was the man Estevez knew as "Papo," and was the man to whom he had sold the firearm. All of this information was in the affidavit presented to the magistrate. It was reasonable for the agents and the magistrate to find Estevez credible, as his statements incriminating Defendant were also self-inculpatory.[10] As discussed above, there is no evidence suggesting that Estevez's identification of Defendant was induced or coerced by a deal for leniency, and the Court finds no evidence that the affidavit reviewed by the magistrate was misleading in this regard. The Court finds there was a substantial basis for the magistrate to credit the identification of Defendant as the purchaser of the Ruger.

---

[10] United States v. Moses, 148 F.3d 277, 280-81 (3d Cir. 1998).

Second, Defendant argues that there was no probable cause to believe that evidence of illegal activity could be found at 3537 Water on August 26, 2010, given the lapse of approximately one month since Defendant's alleged purchase of the stolen weapon.  It is true that the age of information supporting a warrant application is a factor in determining probable cause.[11]  However, firearms are likely to be retained by their owners for significant periods of time, not quickly disposed of like narcotics or stolen cash.[12]  Defendant does not dispute that a gun owner's home is a reasonable place to look for his firearms.  Therefore, it was not unreasonable for the magistrate to conclude that the firearm might be found in Defendant's home approximately one month after he purchased it.

**III.    CONCLUSION**

For the foregoing reasons, the Court concludes that there is no basis to grant Defendant's request for additional discovery, and further finds no grounds to exclude the evidence found during the search of 3537 Water or statements taken from Defendant after the search.

An appropriate Order follows.

---

[11] United States v. Zimmerman, 277 F.3d 426, 434 (3d Cir. 2002).

[12] United States v. Singer, 943 F.2d 758, 763 (7th Cir. 1991).